Filed 3/3/25  In re A.N. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.N., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.C.,<br><br>Defendant and Appellant. | F088711<br><br>(Super. Ct. No. 22CEJ300202)<br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Mary Dolas, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Levy, Acting P. J., Franson, J. and Snauffer, J.

R.C., mother of now 10-year-old A.N. (minor), appeals from orders terminating her parental rights. (Welf. & Inst. Code, § 366.26.)[1] Mother argues noncompliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law, by the Fresno County Department of Social Services (department). Specifically, she argues the department prejudicially erred in failing to comply with and document ICWA's initial duty of inquiry regarding Native American ancestry, requiring conditional reversal.

We find no error and affirm.

## STATEMENT OF THE CASE AND FACTS

We limit our recitation of the background information to that necessary for disposition of the appellate issue.

Minor had been in a probate guardianship with maternal grandmother, Maria L., from 2016 to 2019. In October of 2019, minor was placed into legal guardianship with paternal aunt M.N. After M.N. was denied a request to travel with minor out of state, she relinquished custody of minor to a Sanger police officer in June of 2022. Mother was reported as having substance abuse issues, and alleged father, A.N. (father), was in prison.

A team decision making (TDM) meeting was held June 21, 2022, the day after minor was removed. Present at the meeting were mother, guardian M.N., maternal grandmother Maria L., minor's adult half sister M.M., paternal aunt Maria N., maternal aunt E.E., and maternal uncle R.C. The record does not indicate if any were asked about possible Native American ancestry, nor were they asked about maternal grandfather.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

*Detention*

The department filed a section 300 petition alleging minor was at risk of harm due to mother and father's neglect and inability to care for him. The detention report stated that mother reported that father was not minor's biological father, but she would not name the biological father. Mother reported a lengthy criminal history and drug use. Mother claimed to have last used any drugs or alcohol in 2020 but tested positive for methamphetamine the day of the TDM meeting.

The report indicated that mother and guardian M.N. both reported that they did not have any Native American ancestry.

Detention was held June 23, 2022. At that time, mother reported verbally that she did not have any Native American ancestry. Minor was detained and a jurisdiction and disposition hearing scheduled for July 28, 2022.

*Jurisdiction/Disposition Report and Jurisdiction Hearing*

The report prepared for jurisdiction/disposition recommended that the allegations of the petition be found true. The report recommended that mother be offered reunification services, but that father and additionally named alleged father, E.V., not be offered services pursuant to section 361.5, subdivision (a).

The report stated that M.N., minor's paternal aunt, stated that father had no Native American ancestry. The report also stated that maternal grandmother Maria L. was asked and denied any Native American ancestry. The department requested that the juvenile court find the ICWA did not apply.

Neither mother nor father was present at the October 8, 2022 jurisdiction and disposition hearing. The juvenile court found the allegations of the petition true and found father to be minor's presumed father. Disposition was continued to November 10, 2022.

*Disposition Hearing*

Mother was present at the November 10, 2022 disposition hearing. The juvenile court made a finding that the ICWA did not apply.

The juvenile court ordered mother receive reunification services, but denied services to M.N., pursuant to section 361.5, subdivision (b)(14); to father pursuant to section 361.5, subdivision (e)(1); and to E.V., pursuant to section 361.5, subdivision (a). Mother and father each received once a week visits with minor.

A six-month review hearing was scheduled for April 27, 2023.

*Interim Review Hearing*

A December 20, 2022, interim hearing was held in which the juvenile court granted the motion terminating minor's guardianship. All other orders remained in full force and effect.

*Six-Month Status Review Report and Hearing*

The department's report in anticipation of the six-month review hearing recommended that mother's reunification services be continued, and that minor remain a dependent of the court. Minor continued to be placed in the home of a maternal aunt and uncle, who expressed a willingness in either adoption or guardianship of minor.

Ongoing efforts to locate alleged father E.V. were unsuccessful. Mother had maintained her employment and continued to "strengthen" her relationship with minor through supervised visits. Mother was told she could have unsupervised visits after at least two months of clean testing. Minor was reported to be happy in his placement and showed some improvement after regression in communication skills following visits with mother. Minor was visiting father via video while father was in prison.

While mother completed her parenting class, she continued to have numerous "no shows" and "unable to provide" drug tests, as well as refusing to test three times. She was dropped from a substance abuse program but re-enrolled. She was dropped from

4.

random drug testing and the department recommended a hair follicle test. Mother was attending mental health treatment but had numerous no shows.

On February 9, 2023, father completed an ICWA-020 form stating he had no Native American ancestry.

At the six-month review hearing April 27, 2023, the juvenile court ordered minor remain a dependent of the juvenile court and continued mother's reunification services. Mother was ordered to submit to a fair follicle test.

The 12-month review was scheduled for August 17, 2023, with an interim review June 22, 2023.

_Interim Review Report_

On June 22, 2023, the department filed an interim review report recommending that minor continue as a dependent of the court and reunification services be continued for mother. Mother had been participating in substance abuse treatment but was terminated for non-compliance. She tested positive for methamphetamine on April 7, 2023, and for amphetamines on May 5, 2023, and had numerous "no shows," "unable to provide" and refusals to test. Mother failed to submit to the hair follicle test.

Neither mother nor father was present at the hearing on the interim status report on June 22, 2023. The juvenile court issued an order vacating the hair follicle test, but made no other changes to the existing orders.

_12-Month Status Review Report, Addendum, and Hearing_

In its August 8, 2023, 12-month review report, the department recommended family reunification services for mother be terminated and a section 366.26 permanency planning hearing be set. Minor continued to be placed with a maternal aunt, where he felt comfortable. The maternal aunt and uncle continued to be willing to adopt minor.

While mother completed her parenting education program, she failed to re-enroll in substance abuse treatment or random drug testing. Her mental health treatment revealed mother to display an increase in depressive and anxiety symptoms as well as

5.

irritability, sadness, and worry. Mother attended all scheduled visits with minor, who was always "excited" to see her. Father had supervised, online visits with minor, which appeared to go well.

An addendum report filed October 5, 2023, provided additional information regarding the ICWA. Mother and father had previously reported no Native American ancestry, as had M.N., maternal grandmother Maria L., and maternal aunt E.C. (previously referred to as E.E.). Mother completed an ICWA-020 form June 10, 2023 indicating no known Indian ancestry.[2] The department attempted to contact minor's half sister Maria M., paternal grandaunt R.C., maternal cousins Y.M. and V.M., maternal uncle R.C., paternal aunt Maria N., and paternal cousins J.C. and G.N., but the phone numbers provided were either not in service, did not allow for messages, or a message was left and no return call received.

Mother was present at the October 5, 2023, 12-month review hearing. The juvenile court found that there was a substantial probability that minor would return to mother's home within the following six months and continued reunification services. The 18-month review hearing was scheduled for December 20, 2023.

*18-Month Status Review Report and Hearing*

In its 18-month status review report, the department recommended that reunification services for mother be terminated. Mother had now moved to San Diego with an adult daughter. She was unemployed and had failed to follow through on court ordered substance abuse programs, random drug testing, and mental health treatment. Mother visited minor once or twice a month "when she is in Fresno."

At the February 6, 2024, contested 18-month status review hearing, mother requested a bonding study, which was denied without prejudice. The juvenile court

---

**2**     Mother and father both completed multiple ICWA-020 forms, always indicating they had no known Indian ancestry.

ordered minor remain a dependent of the court and terminated mother's reunification services. A section 366.26 permanency planning hearing was set for June 4, 2024.

*Permanency Planning Report and Hearing*

The June 4, 2024, section 366.26 hearing report repeated earlier ICWA information from 2022 and 2023. It also reported extensive inquiry completed in 2024. In March of 2024, the department received the family findings document for mother and father, and began calling family members to inquire about any updated Native American ancestry. M.M., minor's half sister, was called, but an automated voice stated the number did not work and the department was unable to leave a voicemail. That same day, the department also contacted another of minor's half siblings, D.M., and left a voicemail stating the purpose of the call and a call back number. The department also attempted to contact the father of one of minor's half siblings, and was able to leave a voicemail stating the purpose of the call and a call back number. The department contacted mother's previous stepfather, who did not know if mother had any Native American ancestry. He did know that mother had never lived on a reservation. Maternal grandmother, Maria L., was again contacted and again stated mother had no known Native American ancestry and had never lived on a reservation. Maternal grandmother stated that no other family member would know more that she did about any Native American ancestry. The department attempted to contact R.C.N., a paternal grandaunt, but was unable to leave a voicemail.

The department also contacted maternal cousin Y.M., who returned a call after a voicemail was left. Y.M., stated that she was unsure who mother was and did not think she was related to her, but that mother's last name matched her mother's last name. The department then contacted maternal cousin V.M., who ended the call by stating it was the wrong number.

The department also called R.C., maternal uncle, who confirmed he was mother's brother but was unaware of any Native American ancestry. R.C. stated that the only

7.

family member who would know more was his grandmother, who was deceased. Voicemail messages were also left with E.C., maternal aunt; B.E., minor's uncle by marriage; paternal grandfather A.N.; paternal aunt Maria N.; and paternal cousins, J.C., Joshua C., and J.A. The department spoke to former guardian and paternal aunt M.N., who again denied any Native American ancestry on father's side.

The department requested again that the juvenile court find the ICWA inapplicable.

.        Mother was not present at the July 30, 2024, permanency planning hearing. Mother's counsel urged the juvenile court to apply the beneficial relationship exception to termination of parental right and choose guardianship as the permanent plan. Following argument, the juvenile court found minor was adoptable and terminated mother, father, and alleged father E.V.'s parental rights. By taking judicial notice of all prior findings, the juvenile court impliedly found the ICWA inapplicable.

## DISCUSSION

*General Legal Principles and Standard of Review*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the department have an affirmative and continuing duty,

beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[3]

The protective provisions of ICWA turn on a determination of whether a minor is an "Indian child" as defined by statute.  (25 U.S.C. § 1903(4).)  A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive."  (§ 224.2, subd. (h); see rule 5.481(b)(4); 25 C.F.R. § 23.108 (2024).)  Of course, a tribe may only make such determination, or exercise its right of intervention, if it is made aware of the ongoing proceedings. Accordingly, the scheme requires the appropriate tribe be notified when the court or county welfare agency has *reason to know* the child is Indian.  (§ 224.3, subd. (a); see U.S.C. § 1912(a); 25 C.F.R. § 23.111(a) (2024).)

Fulfilling the notification duty requires sufficient inquiry into the child's native heritage. "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child ... [facing a dependency or delinquency proceeding] is or may be an Indian child."  (§ 224.2, subd. (a); rule 5.481(a).)  California's statutory scheme imposes a duty of initial inquiry on both the department and the court.  The inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Then, on the first appearance upon a petition, "the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c); rule 5.481(a)(2); C.F.R. § 23.107(a) (2024).)

---

**3**     All further refences to the rules are to the California Rules of Court.

9.

The duty of *further* inquiry exists when "the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child ...." (§ 224.2, subd. (e), italics added.) There is reason to believe a child is Indian when there exists "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); see *id.*, subd. (d).) Further inquiry includes, but is not limited to, interviewing the parents and extended family members, contacting the BIA and the State Department of Social Services for assistance, and contacting the relevant tribe and "any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C); see *id.*, subd. (e)(2); rule 5.481(a)(4).)

If proper inquiry reveals information creating reason to know a minor is an "Indian child," the relevant tribe must be notified, and "the court shall treat the child as an Indian child unless and until the court determines on the record and after review of the report of due diligence ... and a review of the copies of notice, return receipts, and tribal responses ... that the child does not meet the definition of an Indian child ...." (§ 224.2, subd. (i)(1); see rule 5.481(b)(3); C.F.R. § 23.107(b) (2024).)

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314, overruled on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18.) Not every error by an agency or department in discharging its duties under section 224.2 will undermine the court's ICWA finding, but the court's ability to exercise discretion in this regard is dependent on adequate record development by the department. " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the

less developed the record, the more limited that discretion necessarily becomes." ' (*In re Kenneth D.* [(2024) 16 Cal.5th 1087] at pp. 1101-1102; see also *In re H.B.* (2023) 92 Cal.App.5th 711, 721.)" (*In re Dezi C., supra,* at p. 1141.)

<u>Analysis</u>

Mother's sole argument is that the department failed to conduct a sufficient and further inquiry because a single maternal relative, minor's maternal grandfather, was not contacted and asked whether the minor had any Native American ancestry. We disagree.

While the Supreme Court of California has not found "what constitutes an adequate and proper inquiry necessary to satisfy section 224.2," the Court explained that their "conclusion does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*In re Dezi C., supra,* 16 Cal.5th at p. 1140.) The Court further stated that:

> "[S]ection 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Ibid.*)

In *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*), this court found that the department's inquiry into the dependent child's Indian heritage, which went no further than the child's parents, was inadequate to comply with the ICWA. In *K.H.,* the parents were of unknown reliability on the question of ancestry, due to being in the "throes of serious drug addiction," and the department had identified and located numerous maternal and paternal relative, including grandparents, but did not inquire of any of them regarding potential Indian heritage. (*K.H., supra,* at p. 605.) However, *K.H.* did not indicate that automatic reversal is required in in all cases where some extended family members are missed in inquiry. As stated in *K.H.,*

> "Where a juvenile court's finding that ICWA does not apply is challenged on appeal, it is difficult to envision a successful claim premised on the agency's failure to question a second cousin or a family friend, if the

11.

agency inquired of a child's closer maternal and paternal relatives on both sides, those relatives provided no information suggesting possible Indian ancestry, and the agency documented its efforts in the record for the juvenile court's review. In other cases, in contrast, second cousins or family friends may be the only individuals available to ask. A different situation yet is presented if there is no one beyond the parents to ask because they refused to provide any information and the agency exercised due diligence but was unable to identify and locate anyone else to ask, or if a relative was specifically identified as having information on the subject but the agency neglected that lead." (*Id.* at p. 604.)

Reversal is necessary where inquiries are "merely perfunctory" and there is insufficient documentation in the record. (*K.H., supra,* 84 Cal.App.5th at p. 606.) In other instances, the inquiry finding may be upheld. If a reviewing court finds that the juvenile court's ICWA finding is supported by substantial evidence, it did not abuse its discretion in finding a "proper and adequate further inquiry and due diligence" (§ 224.2, subd. (i)(2)), and if it did not otherwise commit an error of law, the inquiry ends. (*Ibid.*) This court determined in *K.H.* that the primary question of error is whether the department's inquiry extends "far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*K.H., supra,* at p. 604.)

Here, the department made contact with six maternal relatives throughout the case, including mother, maternal grandmother Maria L., maternal aunt E.C., maternal uncle R.C., and care providers and maternal aunt and uncle D.F. and M.F. The department attempted to contact two other maternal cousins, Y.M. and V.M. It contacted M.M., an adult sister of minor's, and a possible half sibling D.M. While the department's records do not indicate it had contact with maternal grandfather, there is no indication in the record that his contact information was available. In *Dezi C.,* our Supreme Court stated that the department has a duty to contact extended family that were "reasonably available." (*In re Dezi C., supra,* 16 Cal.5th at p. 1140.) Here, none of the many maternal family members questioned mentioned maternal grandfather in the course of the

ongoing case, including maternal grandmother. In fact, maternal grandmother informed the department that no one in the family would have more information about possible Indian ancestry than she did.

We do not find conditional reversal is required for the purpose of investigating the maternal grandfather's name and contact information because neither the department nor juvenile court had interacted with him or had contact information for him, and none of the extensive relatives who were contacted mentioned him either.

We reject mother's challenge to the juvenile court's determination that the department's inquiry into possible Native American heritage was adequate and that the ICWA did not apply. The juvenile court's finding, based on the evidence provided, that there was no reason to know minor was an Indian child and that the ICWA did not apply was supported by substantial evidence.

## DISPOSITION

The juvenile court's orders are affirmed.